UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PETER JONATHAN RACETTE, | ) | No. CV 14-8917 AGR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Peter Jonathan Racette filed this action on November 18, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 8, 10.)  On July 27, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

Racette filed an application for disability insurance benefits and alleged an onset date of March 9, 2012.  Administrative Record ("AR") 161-62.  The application was denied initially and on reconsideration.  AR 82, 92.  Racette requested a hearing before an Administrative Law Judge ("ALJ").  AR 104-05.  On February 3, 2014, the ALJ conducted a hearing at which Racette, Racette's wife, and a vocational expert ("VE") testified.[1]  AR 39-73.  The record was held open for thirty days after the hearing for the submission of additional medical records.  AR 25, 64, 73.  No additional records were submitted.  AR 25.  On April 1, 2014, the ALJ issued a decision denying benefits.  AR 25-35.  On September 29, 2014, the Appeals Council denied the request for review.[2]  AR 1-6.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1]  On the day before the hearing, Racette changed his alleged onset date to September 30, 2012.  *See* AR 154-55 (arguing in the pre-hearing brief an onset date of September 30, 2012, on the ground that Racette collected unemployment benefits from March 12, 2012 through September 29, 2012, and was "not eligible for disability benefits for the same period of time he was getting unemployment benefits"); *see also* AR 42 (Racette's attorney confirmed at the hearing that the alleged onset date was changed to September 30, 2012).

[2]  Racette submitted 27 pages of additional medical records to the Appeals Council, which the Appeals Council received and made part of the record.  AR 5, 312-38.

1    "Substantial evidence" means "more than a mere scintilla but less than a

2    preponderance – it is such relevant evidence that a reasonable mind might accept as

3    adequate to support the conclusion." *Moncada*, 60 F.3d at 523.  In determining whether

4    substantial evidence exists to support the Commissioner's decision, the court examines

5    the administrative record as a whole, considering adverse as well as supporting

6    evidence. *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than

7    one rational interpretation, the court must defer to the Commissioner's decision.

8    *Moncada*, 60 F.3d at 523.

9                                              III.

10                                        DISCUSSION

11       **A.    Disability**

12          A person qualifies as disabled, and thereby eligible for such benefits, "only if his

13   physical or mental impairment or impairments are of such severity that he is not only

14   unable to do his previous work but cannot, considering his age, education, and work

15   experience, engage in any other kind of substantial gainful work which exists in the

16   national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed.

17   2d 333 (2003) (citation and quotation marks omitted).

18       **B.    The ALJ's Findings**

19          The ALJ found that Racette meets the insured status requirements through

20   December 31, 2016.  AR 27.  Following the five-step sequential analysis applicable to

21   disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3]

22   the ALJ found that Racette had not engaged in substantial gainful activity since March

23

24

25          [3]  The five-step sequential analysis examines whether the claimant engaged in
26   substantial gainful activity, whether the claimant's impairment is severe, whether the
     impairment meets or equals a listed impairment, whether the claimant is able to do his
27   or her past relevant work, and whether the claimant is able to do any other work.
     *Lounsburry*, 468 F.3d at 1114.
28

                                              3

9, 2012.  Racette had the severe impairment of bipolar disorder and his impairment did not meet or equal a listing.  AR 27-28.

The ALJ found that Racette had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with nonexertional limitations. He was limited to unskilled work involving simple, repetitive tasks in a non-public setting, with minimal interaction with coworkers and supervisors; and was precluded from working around hazards or climbing ladders, ropes or scaffolds.  AR 29.  He was unable to perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that Racette could have performed.  AR 33-34.

### C.   Step Five of the Sequential Analysis

At step five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do.  *Lounsbury*, 468 F.3d at 1114.  If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits.  If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits.  *Id.*  "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do:  (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."  *Id.*

The VE testified that a person of Racette's age, education, work experience and RFC could perform jobs such as linen room attendant (Dictionary of Occupational Titles ("DOT")[4] 222.387-030), laundry laborer (DOT 361.687-018) and hand packager (DOT 920.587-018).  AR 34, 66-67.  The ALJ found the VE's testimony consistent with the DOT and relied on the testimony.  AR 34, 68.

---

[4]  The DOT raises a rebuttable presumption as to job classification.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

### 1.    Reliance on VE Testimony

With respect to mental limitations, the ALJ limited Racette to unskilled work involving simple, repetitive tasks in a non-public setting, with minimal interaction with coworkers and supervisors.  AR 29.  Racette "concedes to the reasonableness of the [RFC] found by the [ALJ]."  JS 5.

Racette contends the ALJ erred in relying on the VE's testimony that a person limited to "minimal interaction with coworkers and supervisors" could perform unskilled work because, Racette argues, that testimony is inconsistent with the Social Security Administration's Program Operations Manual System ("POMS"), an internal agency document used by employees to process claims.  *See* POMS, located at https://secure.ssa.gov/apps10/ (last visited Nov. 5, 2015).  POMS indicates that certain mental abilities are critical for performing unskilled work, including the ability to "work in coordination with or proximity to others without being (unduly) distracted by them," "ask simple questions or request assistance," "accept instructions and respond appropriately to criticism from supervisors" and "get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes."  (POMS DI 25020.010 ¶ B.3).  Racette argues that the VE must reconcile the inconsistency between her testimony and POMS pursuant to Social Security Rulings ("SSR") 00-4p and 13-2p.[5]

Racette has not shown a conflict between the RFC that required minimal interaction with coworkers and supervisors, and POMS DI 25020.010.  The ALJ rejected a marked limitation in social functioning based in part on the findings of the consultative examiner, who found Racette capable of accepting instructions from

---

[5]  Social Security rulings do not have the force of law.  However, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    supervisors and interacting with coworkers if he continued with psychiatric treatment.[6]

2    AR 28, 247.  This is not a case in which the ALJ precluded interaction with supervisors

3    and coworkers altogether.  The ALJ did not err in relying on the VE's testimony.

4         Moreover, "POMS constitutes an agency interpretation that does not impose

5    judicially enforceable duties on either this court or the ALJ."  *Lockwood v. Comm'r*, 616

6    F.3d 1068, 1073 (9th Cir. 2010) (citation omitted).  "Such agency interpretations are

7    entitled to respect but only to the extent that those interpretations have the power to

8    persuade."  *Id.* (quotation marks omitted) (citing *Christensen v. Harris County*, 529 U.S.

9    576, 587 (2000) and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also*

10   *Kennedy v. Colvin,* 738 F.3d 1172, 1177-78 (9th Cir. 2013) (same); *Carillo-Yeras v.*

11   *Astrue*, 671 F.3d 731, 735 (9th Cir. 2011) (same); *Moore v. Apfel*, 216 F.3d 864, 868-69

12   (9th Cir. 2000) (declining to review allegations of noncompliance with internal agency

13   manual, which "does not carry the force and effect of law.").

14        SSR 00-4p requires that the ALJ identify, and obtain reasonable explanations for,

15   conflict between the VE's testimony and information in the DOT.  SSR 00-4p, 2000 WL

16   1898704, *1 (2000); *see Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).  The

17   ALJ asked the VE whether her testimony conflicted with the DOT, and she testified that

18   it did not.  AR 68.  Racette does not argue otherwise.  SSR 00-4p also states that "SSA

19   adjudicators may not rely on evidence provided by a VE . . . if that evidence is based on

20   underlying assumptions or definitions that are inconsistent with our regulatory policies

21   or definitions."  The examples given in SSR 00-4p involve conflicts between VE

22   testimony and the DOT or SSRs, not POMS.[7]  The ALJ did not err.

23

24        [6]  Racette was able to engage with the examiner in a cooperative and earnest way.
25   He was articulate and his eye contact was good.  AR 245.

26        [7]  Racette's reliance on SSR 13-2p is similarly misplaced.  SSR 13-2p does not
27   address reconciling vocational expert testimony with inconsistencies with POMS.  SSR
     13-2p, 2013 WL 621536, *1 (2013).  SSR 13-2p governs cases involving drug addiction
28   and alcoholism (DAA). The pertinent portion of SSR 13-2p merely restates the agency

## 2.    Lifetime Commitment to Work

The Code of Federal Regulations provides two examples of individuals that cannot make an adjustment to other work:  the worker with a marginal education and 35 years or more of work experience doing only arduous unskilled physical labor; and the worker who is at least 55 years old with no more than a limited education and no past relevant work experience.  20 C.F.R. § 404.1562.

Racette argues that POMS adds a third example of an individual whose vocational factors of age, education and work experience are so unfavorable that the individual is deemed unable to adjust to other work:  A person age 60 or older with a limited education, a 30-year or more commitment to unskilled work or skilled work without transferable skills, an inability to perform past relevant work and no current work activity at the substantial gainful activity level.  POMS DI 25010.001 § B.3.  The term "limited education" means "[f]ormal schooling completed at a level of 7th through 11th grade."  *Id.* (citing definition in POMS DI 25001.001).

Racette argues that he turned 60 on November 1, 2012.  Racette graduated high school and completed U.S. Navy Electronics Technician School and U.S. Army Satellite Communications School.  AR 33, 43, 178.  He clearly does not meet the definition of limited education in POMS.  Racette nevertheless argues that he cannot "access" his high school education, military education or the skills he used as an electronic technician in private industry from 1980 to 2012.  JS 20.  The ALJ did not make such a finding.  Instead, the ALJ found that Racette stopped working in March 2012 due to a business-related layoff and not because of his impairments.  Up until November 2013, his hobby was disassembling, repairing and rebuilding clocks.  AR 31.  His recent deterioration was due to medication adjustment rather than mental deterioration, and he had since switched physicians to improve his treatment.  AR 30-31.  The ALJ found that the recent deterioration did not satisfy the 12-month duration requirement.  AR 32.

---

requirement that its adjudicators follow agency policy as set forth in the Commissioner's regulations, SSRs, acquiescence rulings "and other instructions" such as POMS.

Moreover, as discussed above, POMS does not impose judicially enforceable duties on the court or the ALJ.  *See, e.g., Lockwood*, 616 F.3d at 1073.  "The Code of Federal Regulations is clearly binding upon the Commissioner."  *Moore*, 216 F.3d at 869.  As Racette recognizes, the Code of Federal Regulations does not contain the POMS adverse profile on which he relies.  The ALJ reasonably concluded that Racette was not precluded from making an adjustment to other work.  AR 34.

To the extent Racette argues that "[a] limitation to simple, repetitive tasks is inconsistent with some unskilled work requiring reasoning level 3," his argument is unpersuasive in this case.  The hypothetical to the VE included a limitation to unskilled work involving simple, repetitive tasks in a non-public setting with minimal interaction with workers and supervisors.  In response to the hypothetical, the VE testified that a person with that RFC could perform the jobs of linen room attendant, laundry laborer, and hand packager.  AR 34, 67.  The linen room attendant requires reasoning Level 3. DOT 222.387-030.  Even assuming Racette could not perform that job, he could perform the jobs of laundry laborer (Level 1) and hand packager (Level 2).  DOT 361.687-018, DOT 920.587-018.

## D.   Documents Submitted to Appeals Council

Racette contends that remand is appropriate because he submitted new and material evidence to the Appeals Council that it did not make a part of the record.

The Order of Appeals Council indicates that the Appeals Council made a part of the record the June 5, 2014 letter from Racette's attorney, which is in the record as Exhibit 12E.  AR 4-5; 234-42.  The fax transmittal sheet from Racette's attorney indicates the "total no. of pages including cover" was nine pages.  AR 234.  Racette submits a declaration that the transmittal to the Appeals Council through electronic records express consisted not only of the letter but also 171 pages of statistical evidence from O*Net online, the Employment Projections from the Bureau of Labor Statistics, printouts from the Occupational Employment Statistics Query System from the BLS website, occupational reports from *Job Browser Pro*; screen shots from *Job*

1    *Browser Pro*; and single occupation employment estimates from *Job Browser Pro*.

2    (Rohlfing Decl. ¶ 2, 5.)  The receipt for the electronic records express transmittal

3    indicates that the document type is "Representative Brief" and the file size is 4044.0 KB.

4    (Exh. 2 to JS.)

5        A claimant "must show 'that there is new evidence which is *material* and that

6    there is *good cause* for the failure to incorporate such evidence into the record in a prior

7    proceeding." *Booz v. Sec'y*, 734 F.2d 1378, 1380 (9th Cir. 1983) (emphasis in original);

8    *see Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).  Materiality requires a

9    showing of a reasonable possibility that the new evidence would have changed the

10   outcome had it been made a part of the record.  *Booz*, 734 F2d at 1380-81.  Racette

11   has shown good cause.  However, Racette has not shown a reasonable possibility that

12   the new evidence would have changed the outcome.  It is not evident that the statistical

13   evidence conflicts with the vocational expert's testimony.[8]  Any alleged conflict depends

14   at a minimum on an opinion as to how the DOT jobs translate into job classifications in

15   O*Net or other sources, and an opinion as to which job numbers in O*Net or other

16   sources must be added together.  Racette does not provide an opinion from a VE or

17   other foundation for his interpretation of the statistical evidence.  *Compare Booz*, 734

18   F.2d at 1380-81 (claimant submitted physician opinion).  To the extent Racette relies on

19   an attorney's arguments, his attorney's letter was made a part of the record.  AR 235-

20   41.  The Appeals Council found that the reasons Racette disagreed with the ALJ's

21   decision did not provide a basis for changing the ALJ's decision.  AR 2, 5.  Remand is

22   not warranted here.

23

24   _____

25       [8]  The ALJ properly relied on the VE's testimony. An ALJ may rely on a VE's
     testimony regarding the number of jobs in a region or the country. *Bayliss v. Barnhart*,
26   427 F.3d 1211, 1218 (9th Cir. 2005).  "An ALJ may take administrative notice of any
     reliable job information, including information provided by a VE.  A VE's recognized
27   expertise provides the necessary foundation for his or her testimony.  Thus, no
     additional foundation is required." *Id.*
28

**IV.**

**<u>ORDER</u>**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 10, 2015

_____
ALICIA G. ROSENBERG
United States Magistrate Judge